IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KYLE K. TIM SING,<br><br>                    Plaintiff,<br><br>     vs.<br><br>HAWAIIAN AIRLINES, INC.,<br><br>                    Defendant. | CIV. NO. 20-00427 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 30 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 30

## I.  INTRODUCTION

Before the court is a Motion by Defendant Hawaiian Airlines, Inc., ECF No. 30, requesting summary judgment as to all claims asserted by Plaintiff Kyle K. Tim Sing.  The court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the court GRANTS the Motion as to Plaintiff's whistleblower claim under the Hawaii Whistleblower's Protection Act ("HWPA"), Hawaii Revised Statutes ("HRS") § 378-61 et seq., and as to Plaintiff's request for punitive damages.

## II. BACKGROUND

**A.    Factual Background**

Plaintiff worked as a line serviceman for Defendant Hawaiian Airlines for over 14 years, ending with his termination on July 23, 2019.  ECF No. 31 at PageID # 132, ¶ 1.[1]  Plaintiff's duties included "guiding, towing and pushing back aircraft, and servicing aircraft with fuel and oil."  *Id.*, ¶ 4.  Those duties required "standing, walking, sitting/driving, lifting approximately 75 pounds or more, and other physical activity, with walking required for at least half of the [ten-hour] shift."  *Id.*, ¶¶ 5–6.  Plaintiff was a union member, and his employment was subject to the terms of a collective bargaining agreement.  *Id.*, ¶ 3.

When Plaintiff accepted the line serviceman position, he agreed to comply with Defendant's attendance policy.  *See id.* at PageID # 133, ¶ 8.  That policy emphasizes that Defendant "operates an air transportation service designed to provide a reliable and dependable operation to the traveling public," and "[i]n order to fulfill this obligation, [Defendant] must have its employees report to work as scheduled."  ECF No. 31-29 at PageID # 327.  "Absences of any kind weaken [Defendant's] ability to operate and provide essential transportation services to the public, and to earn a return on its investment."  *Id.*  Defendant's policy

---

[1] The court cites to the Defendant's Concise Statement of Facts, ECF No. 31, for facts that are not disputed by Plaintiff in his Concise Statement of Facts, ECF No. 36.

acknowledges, however, that "employees are vulnerable to disabling illnesses or injuries which might keep them from reporting to work." *Id.*

Defendant's attendance policy made Plaintiff subject to the Attendance Control Program ("ACP"), a progressive discipline program designed to balance Defendant's need for consistent attendance with employees' need to take off work for illnesses and injuries. *See* ECF No. 31 at PageID # 133, ¶ 8; ECF No. 31-29 at PageID # 327. Under the ACP, employees are given notice of excessive absences and are progressed through disciplinary "steps," the fifth and final step being termination. *See id.* To increase a step in the ACP, including from Step 0 to Step 1, an employee must have committed three "occurrences" within a three-month period. *See id.* An "occurrence" is defined as an absence from work on any single day, and absences on consecutive days are consolidated into a single occurrence. *Id.* To drop down to Step 0, an employee must have an occurrence-free attendance record for one year from the last step increase. *See id.*

Certain absences are exempt from the ACP. "Absences covered by the Family Medical Leave Act (FMLA), Hawaii Family Leave Act (HFLA) or California Rights Act (CFRA) are not counted as occurrences under the ACP." *Id.* at PageID # 328. Additionally, there is a dispute over whether absences stemming from workplace injuries, i.e., absences related to workers' compensation, are

exempt from the ACP.  *Compare* ECF No. 35 at PageID # 362, *with* ECF No. 38 at PageID ## 486, 492.

In July 2013, Plaintiff experienced a workplace injury affecting his neck, back, and left knee.  ECF No. 31 at PageID # 133, ¶ 11.  In August 2017, Plaintiff experienced another workplace injury, this one affecting his left foot and left ankle.  *Id.*, ¶ 13.  Plaintiff sought treatment for those injuries throughout his employment with Defendant, including during the months leading up to his termination.  *See id.*, ¶¶ 11–13; ECF No. 36-3 at PageID ## 418–19, ¶¶ 3, 4, 8.  Those injuries affected Plaintiff's performance at work because they limited his ability to walk, stand, and lift objects.  ECF No. 36 at PageID # 378, ¶ 45; *see also* ECF No. 36-3 at PageID # 419, ¶ 8 (Plaintiff declaring that "my work injuries" were "aggravated by work activities"); ECF No. 39 at PageID # 504, ¶ 45 (Defendant agreeing that Plaintiff incurred significant workplace injuries but disputing Plaintiff's legal conclusions regarding those injuries).

The principal factual dispute before the court is whether Plaintiff's progressions from Step 0 to Step 4 were proper under the ACP.[2]  Plaintiff received a Step 1 notice on April 20, 2017.  ECF No. 36-4 at PageID # 428.  That step increase was based on the following three occurrences in 2017: an absence on

---

[2] Plaintiff concedes that his progression from Step 4 to Step 5 (termination) was supported by at least three occurrences.  *See* ECF No. 35 at PageID # 370.

March 18, consecutive absences from March 31 through April 1, and consecutive absences from April 6 through April 15. *Id.* Plaintiff asserts that one occurrence—the absences from April 6 through April 15—was related to workers' compensation and thus should have been excluded from the ACP. ECF No. 36-3 at PageID # 420, ¶ 15 (citing ECF No. 36-5, a doctor's note dated April 10, 2017).

Plaintiff received a Step 2 notice on June 23, 2017, based on three occurrences: consecutive absences from April 22 through April 30, consecutive absences from May 6 through May 7, and an absence on May 14. ECF No. 36-6 at PageID # 432. Plaintiff asserts that one occurrence—the absences from April 22 through April 30—was related to workers' compensation and thus should have been excluded from the ACP. ECF No. 36-3 at PageID ## 420–21, ¶¶ 16–19 (citing ECF No. 36-10, a doctor's note dated July 25, 2017).

Plaintiff received a Step 3 notice on August 14, 2017, based on four occurrences: an absence on June 25, consecutive absences from July 8 through July 13, consecutive absences from July 16 through July 17, and consecutive absences from July 22 through July 24. ECF No. 31-15 at PageID # 312. Plaintiff asserts that all the absences in July (three occurrences) were related to workers' compensation and thus should have been excluded from the ACP. ECF No. 36-3 at PageID # 421, ¶¶ 21–23; ECF No. 36 at PageID # 376, ¶ 16 (citing ECF Nos. 36-8, 36-9, and 36-10, all doctor's notes from July 2017).

Plaintiff received a Step 4 notice on December 4, 2017, based on six occurrences: an absence on August 21, an absence on September 26, an absence on October 10, consecutive absences from October 16 through October 25, consecutive absences from November 5 through November 8, and consecutive absences from November 13 through November 14.  ECF No. 31-16 at PageID # 313.  That notice also included a waiver, which Plaintiff signed, of the right to "participate in a disciplinary hearing" for "[p]lacement on Step 4 of the [ACP]." *Id.*  Plaintiff asserts that two occurrences—the August 21 and September 26 absences—were related to workers' compensation and thus should have been excluded from the ACP.  ECF No. 36 at PageID # 376, ¶ 17; ECF No. 36-3 at PageID # 421, ¶¶ 24–26 (citing ECF Nos. 36-12 and 36-13, doctor's notes from August 2017 and September 2017, respectively).

Sometime between December 2017 and April 2018, Plaintiff was moved down to Step 3 of the ACP.  *See* ECF No. 30-1 at PageID # 111; ECF No. 35 at PageID # 364.  The parties do not explain the justification for the regression, nor do they provide a document memorializing the regression.  *See* ECF No. 31 at PageID # 134, ¶¶ 17–18; ECF No. 36 at PageID ## 376–77, ¶¶ 17–18.

Plaintiff received a second Step 4 notice on April 29, 2018, based on four occurrences in 2018: consecutive absences from February 6 through February 11, consecutive absences from February 27 through February 28, consecutive

absences from March 26 through March 28, and consecutive absences from April 22 through April 25.  ECF No. 36-14 at PageID # 448.  Plaintiff asserts that all of those absences, with the exception of the absences on February 27 and 28, were related to workers' compensation and thus should have been excluded from the ACP.  ECF No. 36-3 at PageID # 422, ¶¶ 27–30 (citing ECF Nos. 36-15, 36-16, and 36-17, doctor's notes from February 2018, March 2018, and April 2018, respectively).

At some point in 2018, Plaintiff complained to one of Defendant's managers, Ms. Nazarene Anderson, that he believed he was being denied workers' compensation benefits in contravention of Hawaii law.  *See* ECF No. 31-8 at PageID ## 267–70.  According to Plaintiff, Ms. Anderson responded by stating that she would "take it up with the upper board to see if everything is legit" and would "get back to [him] [after] I get it investigated."  *Id.* at PageID # 268, ll. 13–14; *id.* at PageID # 269, ll. 8–9.  Plaintiff's complaint to Ms. Anderson paralleled his long-running dispute with Defendant over disability benefits that was being adjudicated by Hawaii's Department of Labor and Industrial Relations.  *See generally* ECF No. 36-2.

On March 3, 2019, Plaintiff received a Step 5 notice based on eight occurrences in 2018: consecutive absences from May 1 through May 2, an absence on June 5, an absence on July 29, an absence on August 19, consecutive absences

from November 12 through November 27, an absence on December 4, an absence on December 9, and an absence on December 12.  ECF No. 36-18 at PageID # 456. Plaintiff asserts that the June 5 absence was related to workers' compensation. ECF No. 36 at PageID # 377, ¶ 32 (citing ECF No. 36-19, a doctor's note from June 5, 2018).  But Plaintiff does not assert that the Step 5 notice was improperly issued, as there were a sufficient number of absences supporting that step increase, even setting aside the June 5 absence.  *See* ECF No. 35 at PageID # 370.

Although they were not listed in the Step 5 notice, Plaintiff had additional absences in early 2019: consecutive absences from January 2 through January 8, and consecutive absences from January 13 through January 16.  *See* ECF No. 30-1 at PageID ## 112–14; *see also* ECF No. 36-3 at PageID # 422, ¶ 32. Defendant views those absences as providing additional support for the Step 5 progression.  *See* ECF No. 30-1 at PageID ## 112–14.  Plaintiff disagrees, asserting that those absences were related to workers' compensation and thus could not have been within the scope of the ACP.  ECF No. 36-3 at PageID ## 422–23, ¶¶ 31–34 (citing ECF Nos. 36-20, 36-21, and 36-22, all doctor's notes from January 2019).

The Step 5 notice put into motion the process for terminating Plaintiff. A hearing was held on July 1, 2019, by Defendant's Senior Contract Administrator, Mr. Aaron Iga, to "review [Plaintiff's] attendance record and

determine if progression to Step 5 of the [ACP] was now warranted." ECF No. 31-2 at PageID ## 140, 144.  Plaintiff was present with a union representative, and Ms. Anderson appeared on behalf of Defendant.  *Id.* at PageID # 140.  Ms. Anderson, Plaintiff, and the union representative all presented evidence and argument.  *See id.* at PageID ## 140–43.  Ms. Anderson explained that the delay in issuing the Step 5 notice was caused by Plaintiff's position "that all of [his] absences were the result of either [his] workers' comp and/or FMLA claim(s)," which forced "Leave Management to evaluate [his] attendance record to identify any unexcused absences for use on the ACP."  *Id.* at PageID ## 141–42.

On July 23, 2019, Mr. Iga issued a written decision terminating Plaintiff's employment.  *Id.* at PageID ## 140, 144.  Mr. Iga discussed the various occurrences supporting the Step 5 progression, stating that "[a]ny approved absences related to your [workers' compensation] injury or FMLA were not counted toward your progression on the ACP."  *Id.* at PageID ## 143–44.  "[F]ollowing a thorough review of the material evidence along with consideration of all pertinent arguments presented at hearing," Mr. Iga concluded that the Step 5 progression and the associated termination were warranted.  *Id.* at PageID # 144.

## B.    Procedural Background

On October 22, 2019, Plaintiff filed a Charge of Discrimination with both the U.S. Equal Employment Opportunity Commission and the Hawaii Civil

Rights Commission (the "EEOC Charge"). *See* ECF No. 31-34 at PageID ## 342–43. In that EEOC Charge, Plaintiff alleged that his rights under the ADA were violated when, "[o]n or about July 23, 2019, [he] was denied reasonable accommodation for [his] disabilities (physical) and subsequently discharged from [his] position." *Id.* at PageID # 343. Plaintiff alleged, specifically, that he was disabled due to a workplace injury he suffered in 2013, and that his disabilities caused him to miss work. *Id.* He also alleged that he had "provid[ed] doctor notes every time [he] missed work due to his disabilities." *Id.* Plaintiff received a letter from the EEOC on July 8, 2020 (or slightly later), giving him notice of his right to sue in federal court. *See* ECF No. 1 at PageID # 3, ¶ 8.

Plaintiff filed his Complaint against Defendant on October 6, 2020, bringing a discrimination claim under the ADA[3] and a whistleblower claim under the HWPA. ECF No. 1 at PageID ## 4–5, 7. The Complaint seeks punitive damages in addition to other forms of relief. *Id.* at PageID # 6. Defendant filed the instant Motion for Summary Judgment on September 8, 2021. ECF No. 30.

---

[3] In the Memorandum supporting its Motion, Defendant makes arguments as to both an ADA "discrimination" claim and an ADA "[f]ailure to [a]ccommodate" claim. ECF No. 30-1 at PageID ## 117, 123. To the extent the Complaint could be read to allege both a discrimination claim and a failure-to-accommodate claim, *see* ECF No. 1 at PageID # 4, the court views those claims as one and the same because they hinge on the same alleged actions—Defendant's misapplying the ACP and ultimately terminating Plaintiff. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) (explaining that a failure-to-accommodate claim and a discrimination claim are often the same when the result of the alleged failure to accommodate is termination). During the November 1, 2021 hearing on this Motion, Plaintiff's counsel confirmed that his ADA claim is a discrimination claim, not a reasonable accommodation claim.

Plaintiff filed an Opposition on October 8, 2021.  ECF No. 35.  Defendant filed a Reply on October 18, 2021.  ECF No. 38.  And a hearing on the Motion was held on November 1, 2021.  ECF No. 44.  At the court's request, the parties provided supplemental briefing regarding the limitations period governing Plaintiff's EEOC Charge.  *See* ECF Nos. 45, 46.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . ., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks

11

omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle*, 627 F.3d at 387; *see also Anderson*, 477 U.S. at 247–48 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Moreover, it is not the court's duty to dredge through the record to determine whether the evidence unmistakably favors one side or the other—the court must instead ask whether a fair-minded jury could return a verdict for the plaintiff based on the plaintiff's presentation of the evidence. *See Anderson*, 477 U.S. at 252; *see also Bill Darrah Builders, Inc. v. Hall at Makena Place, LLC*, 2018 WL 650195, at *6 n.6 (D. Haw. Jan. 31, 2018) (reminding movant's counsel that "judges are not 'like pigs, hunting for truffles' in the record, and all arguments must be clearly briefed with citations to supporting evidence" (quoting *United States v. Dunkel*, 927 F. 2d 955, 956 (7th Cir. 1991))).

## IV.  <u>ANALYSIS</u>

Plaintiff has come forward with evidence demonstrating a genuine issue of material fact as to each element of his ADA discrimination claim. Defendant, moreover, does not provide a legitimate, nondiscriminatory reason for terminating Plaintiff that is sufficient to rebut Plaintiff's prima facie showing. Plaintiff's ADA claim thus survives summary judgment.

But for the HWPA claim, Plaintiff has not come forward with evidence demonstrating a genuine issue of material fact as to the causation element of that claim.  The HWPA claim does not, therefore, survive summary judgment. Nor does Plaintiff's request for punitive damages, because Plaintiff presents no evidence—direct or circumstantial—that Defendant acted with "reckless indifference"—much less with "malice"—as to the anti-discrimination provisions of the ADA.

### A.    **ADA Discrimination Claim**

"The ADA prohibits an employer from discriminating 'against a qualified individual with a disability because of the disability.'" *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)).  To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job

with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."  *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

ADA discrimination claims are subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).  If a plaintiff-employee establishes a prima facie case of discrimination, "[t]he burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action.  If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual."  *Id.*

In this case, the disputes over the second and third elements of Plaintiff's ADA claim, and the dispute over Defendant's asserted nondiscriminatory reason for terminating Plaintiff, all hinge on the pivotal issue of whether Plaintiff was properly progressed through the ACP.  Underlying that pivotal issue are the further issues of whether absences related to workers' compensation should be excluded from the ACP and, if so, whether Plaintiff would have been terminated under the ACP even if certain absences had been excluded. All of these issues are genuine issues of material fact, precluding summary judgment on Plaintiff's ADA claim.

## 1.   *Disability*

To satisfy the first element of his ADA discrimination claim—

disability—Plaintiff must show that he had a "physical or mental impairment that

substantially limit[ed] one or more major life activities."  *See* 42 U.S.C.

§ 12102(1)(A).  "Major life activities" include, but are not limited to, "walking,

standing, lifting, . . . and working."  *Id.* § 12102(2)(A).  The question whether a

plaintiff's disability "substantially limits" a major life activity is a fact-intensive,

individualized inquiry.  *See Rohr v. Salt River Project Agric. Imp. & Power Dist.*,

555 F.3d 850, 858 (9th Cir. 2009).  That term "is to be 'construed broadly in favor

of expansive coverage' and 'is not meant to be a demanding standard.'"  *Vanhorn*

*v. Hana Grp., Inc.*, 979 F. Supp. 2d 1083, 1092 (D. Haw. 2013) (quoting an EEOC

regulation, 29 C.F.R. § 1630.2(j)(1)(i)).

For the purposes of this Motion, it is undisputed that Plaintiff suffered

injuries affecting his ability to walk, stand, and lift objects.  *See* ECF No. 39 at

PageID # 504, ¶ 45.  It is also undisputed that walking, standing, and lifting are

major life activities, *see* 42 U.S.C. § 12102(2)(A).  What is disputed is whether

Plaintiff's injuries "substantially limited" his ability to walk, stand, and lift.

Plaintiff asserts that his capacity to walk, stand, and lift was

substantially limited by his workplace injuries to his neck, back, left knee, and left

ankle.  *See* ECF No. 36 at PageID # 378, ¶ 45.  Plaintiff submits a declaration

15

averring that he "could not walk for more than 50 yards before [he] began to feel pain," "could not stand for more than 30 minutes," "could only lift 75 pounds occasionally," and "had trouble standing up."  ECF No. 36-3 at PageID # 419, ¶ 7. Plaintiff also submits a "Doctor's Statement" from his physician and addressed to the Hawaii Civil Rights Commission.  ECF No. 36-23.  In that statement, the physician certifies that Plaintiff has a physical impairment relating to the diagnoses of "strain; abrasion; left foot," and "chronic lumbar radiculopathy; left ankle."  *Id.* at PageID # 466.  The physician also certifies that Plaintiff's physical impairment "limit[ed] one or more major life activities" due to his "limited [range of motion]" and "daily sharp pain," including "aggravating pain in [his] lower back and [his] ankle pain."  *Id.*

This evidence establishes a triable issue of fact as to whether Plaintiff was disabled.  Although Defendant relies heavily on Plaintiff's admission that his physician did not order restricted duty, *see* ECF No. 38 at PageID # 488 (citing ECF No. 31-8 at PageID # 258, ll. 1–5), various physician notes demonstrate that the recommended treatment was for Plaintiff to take off work and rest his injuries, not to modify his duties at work.  *See, e.g.*, ECF No. 36-10 at PageID # 440 ("Patient was unable to attend work/school from 7/22/17 to 7/24/17. . . .  May return to work/school on: 7/28/17; full duty, normal schedule. . . .  Employer is instructing employees to tandem drive/walk to the taxi way which is about 60 to 80

yards from gate to gate.  Due to the increased pain caused by the excessive walking[,] patient had increased pain in his back, knee and neck.").  The court has no reason to infer merely from that treatment plan that Plaintiff's limitations were not substantial, especially given Defendant's contention that "any potential accommodation of eliminating [Plaintiff's] job duties . . . would be unreasonable," ECF No. 38 at PageID # 497 n.4.[4]

In short, Plaintiff's evidence—the physician's certification statement and the assertions in Plaintiff's declaration—is sufficient to raise a triable issue of fact as to whether Plaintiff was substantially limited in a major life activity.  The "substantially limited" standard is not particularly demanding, *see Vanhorn*, 979 F. Supp. 2d at 1092, and Plaintiff's inability to stand for more than 30 minutes, along with his inability to walk more than 50 yards without pain, are notable limitations. *See Daoud v. Avamere Staffing, LLC*, 336 F. Supp. 2d 1129, 1135 (D. Or. 2004) (denying summary judgment when plaintiff presented evidence that "walking requires her to rest frequently," "she can stand for only short periods of time," and "she experiences substantial pain when walking, thus causing her to walk much more slowly than the average person"); *see also E.E.O.C. v. Sears, Roebuck & Co.*,

_____

[4] The court also declines Defendant's invitation to assess the credibility of Plaintiff's physician with respect to the physician's certification of disability. *See* ECF No. 38 at PageID ## 489–90 ("Plaintiff cannot rely on the mere conclusion by his doctor . . . .  Plaintiff is not 'disabled.'").  The court does not make credibility determinations at the summary judgment stage. *Soremekun*, 509 F.3d at 984.

233 F.3d 432, 438–39 (7th Cir. 2000) ("While we do not suggest that the evidence [of a doctor's diagnosis of walking impairment] conclusively proves that [intervenor] was substantially limited in her ability to walk, on the basis of the testimony of both [intervenor] and her physicians, the [intervenor and EEOC] have met their burden of establishing a material dispute as to the severity of [intervenor's] impairment."); *cf. Thorn v. BAE Sys. Hawaii Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1221 (D. Haw. 2008) (granting summary judgment when plaintiff's showing lacked "any explanation of precisely how" his impairments "affect[ed] [his] ability to walk, stand, and lift," including the "length of time he can walk" and "how long [he] can . . . stand at a time").

## 2. *Qualified Individual*

To satisfy the second element of his ADA discrimination claim— qualified individual—Plaintiff must show that, "with or without reasonable accommodation, [he] [could] perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The "essential functions" of a job can be ascertained from the employer's "written description [of the job] [when] advertising or interviewing applicants for the job." *Id.* As a preliminary matter, Defendant contends that an essential function of Plaintiff's employment was simply being present at work. *See* ECF No. 30-1 at PageID ## 120–21.

The court agrees.  Particularly relevant is Defendant's ACP, a policy providing a written description of the attendance expectations for employees in the "IAM Mechanical" department.  *See* ECF No. 31-29 at PageID # 327.  That policy was presented to, and signed by, Plaintiff prior to his commencing employment as a line serviceman.  *Compare* ECF No. 31-8 at PageID # 189–90 (confirming signature date of January 7, 2005), *with* ECF No. 31 at PageID # 132, ¶ 1 ("Plaintiff worked for HAL [starting] February 2005 . . . .").  The ACP thus provides compelling evidence as to the essential functions of Plaintiff's position.  *See* 42 U.S.C. § 12111(8).  And the clear language in the ACP describing the purpose behind Defendant's attendance standards—namely, that providing reliable air transportation requires consistent employee attendance—establishes that attendance was an essential function of Plaintiff's position.  *See* ECF No. 31-29 at PageID # 327; *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("[A] majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions.").

Defendant argues that Plaintiff's failure to meet the ACP's attendance requirements demonstrates, in and of itself, that Plaintiff could not perform the essential functions of his position with reasonable accommodations.  *See* ECF No. 30-1 at PageID ## 119–21.  Put differently, Defendant argues that attendance was

19

an essential function of Plaintiff's position, the ACP was a reasonable

accommodation for Plaintiff's disability, and, therefore, Plaintiff's failure to satisfy

the ACP establishes that Plaintiff was not a "qualified individual." *See id.* In

support of that argument, Defendant produces evidence of Plaintiff's attendance

record and his step increases under the ACP, which Defendant contends warranted

Plaintiff's termination. *See* ECF No. 31 at PageID ## 133–36, ¶¶ 9–39; ECF No.

30-1 at PageID ## 111–16.

In response, Plaintiff disputes whether the step increases were proper

under the ACP.[5] *See* ECF No. 35 at PageID ## 365, 368–70. Specifically,

Plaintiff argues that the progressions from Step 0 to Step 4 were improper because

Defendant considered absences caused by Plaintiff's workplace injuries, i.e.,

absences related to workers' compensation. *See id.*; ECF No. 36 at PageID

## 376–77, ¶¶ 14–18. In support of that argument, Plaintiff submits numerous

doctor's notes that concern his "[d]isability [c]ertificate" and his workplace

injuries to his back, knee, ankle, and/or foot. *See, e.g.*, ECF No. 36-5 at PageID

# 430; ECF No. 36-12 at PageID # 444. In each of those notes, the physician

---

[5] Plaintiff's theory on the "qualified individual" element is essentially the flipside of Defendant's theory: The leave that Defendant should have granted Plaintiff under the ACP was a reasonable accommodation, and if that leave would have been granted, Plaintiff could have performed the essential functions of his position with the aid of a reasonable accommodation. *See* ECF No. 35 at PageID ## 367–68.

declares that Plaintiff "was unable to attend work" on certain dates.  *See, e.g.*, ECF No. 36-10 at PageID # 440.

The parties disagree over whether it was appropriate for Defendant to use absences related to workers' compensation as grounds for progressive discipline under the ACP.  *Compare* ECF No. 35 at PageID # 362, *with* ECF No. 38 at PageID ## 486–87, 492.  Regarding that disagreement, there is a genuine issue of material fact as to whether absences related to workers' compensation should be excluded from the ACP.  Defendant contends that Plaintiff "misinterprets the ACP" and "fails to point to any language in the ACP or other admissible evidence" to support excluding absences that are related to workers' compensation.  ECF No. 38 at PageID ## 492, 493 n.2.

Plaintiff, however, points out that the July 23, 2019 written decision concerning his termination specifies that "[a]ny approved absences related to [his] [*workers' compensation*] *injury* or FMLA were not counted toward [his] progression on the ACP."  ECF No. 31-2 at PageID # 143 (emphasis added).  And in the hearing leading up to that decision, Defendant's representative explained that the Step 5 notice was delayed because management had to investigate Plaintiff's claim that certain absences were "the result of either [his] *workers' comp* and/or FMLA claim(s)."  *Id.* at PageID ## 141–42 (emphasis added).  Further, there is a handwritten note on the Step 1 notice stating that "some

absences are pending worker's comp." ECF No. 36-6 at PageID # 432. And the Step 5 notice itself describes how Defendant's manager has "been working with [the workers' compensation department] to ensure that specific dates were not [workers' compensation] related." ECF No. 36-18 at PageID # 456.

This evidence suggests, at a minimum, that Defendant and its employees thought that the absences that were related to workers' compensation should have been excluded from the ACP.[6] The court thus finds there to be a triable issue of fact as to whether the ACP excludes absences related to workers' compensation. In resolving the remainder of Defendant's Motion, the court views that dispute in the light most favorable to Plaintiff, *see Scott*, 550 U.S. at 378, meaning that absences related to workers' compensation will be excluded from the ACP.

Next, the court considers Plaintiff's factual contentions concerning whether the progressions from Step 0 to Step 4 were proper. Viewing the numerous doctor's notes in the light most favorable to Plaintiff—i.e., as excusing absences due to workplace injuries—and after regrouping the remaining absences

---

[6] When pressed at hearing to clarify Defendant's position on this issue, Defendant's counsel acknowledged that absences related to workers' compensation could be excluded from the ACP but that excluding such absences required the employee to comply with the timing and form requirements for submitting proof of exclusion, e.g., doctor's notes.

in support of step progressions,[7] the court finds that Plaintiff should have been at Step 3—not Step 5—as of March 3, 2019, the date of the original Step 5 termination notice.  In other words, viewing the evidence most favorably to Plaintiff, Defendant is incorrect when it asserts that Plaintiff's termination was in accordance with the legitimate, unbiased procedures of the ACP.  The court's conclusion—in summary format—is set forth in the Appendix to this Order.

Defendant further contends that Plaintiff waived his ability to challenge step progressions other than the progression from Step 4 to Step 5 because he did not exhaust such challenges in his EEOC Charge.  ECF No. 38 at PageID ## 494–95 n.3.  Specifically, Defendant contends that "the only absences that Plaintiff exhausted" are those relating to his claim in the EEOC Charge that he was "denied reasonable accommodation for his disabilities '[o]n or about [the date of final termination].'"  *Id.* at PageID ## 496–97 (quoting ECF No. 31-34 at PageID # 343).  Defendant also contends that absences other than those supporting the Step 5 notice are outside the scope of the EEOC Charge because they occurred more than 300 days before Plaintiff's filing of that Charge.  *See id.* at PageID ## 494–95 n.3 (noting that the EEOC Charge was filed on October 22, 2019); *see*

---

[7] The court has regrouped the remaining absences according to the rules set forth in the ACP, e.g., that consecutive absences are consolidated into a single occurrence, and that a step increase requires three occurrences within a three-month period, *see* ECF No. 31-29 at PageID # 327.

*also Chun v. City & Cty. of Honolulu*, 2019 WL 150539, at *3 (D. Haw. Jan. 9, 2019) (citing 42 U.S.C. § 2000e-5(e)(1) and noting that the 300-day limitations period applies to ADA claims filed in a "worksharing" jurisdiction like Hawaii).

The court rejects both contentions as a matter of law.  *See McCoy v. Clark*, 766 F. App'x 521, 524 (9th Cir. 2019) ("[S]ummary judgment based on exhaustion is a purely legal issue . . . .").  Regarding the first, the EEOC Charge is best interpreted as challenging all of the step progressions—and the absences underlying those step progressions—precipitating Plaintiff's termination.  The court places weight on the language in the EEOC Charge that Plaintiff "suffered a work place injury" "[o]n or about July 4, 2013," and that Plaintiff "was still terminated" "[d]espite providing doctor notes *every time* [he] missed work due to [his] disabilities."  ECF No. 31-34 at PageID # 343 (emphasis added).  Although that language does not expressly reference the antecedent step progressions, the antecedent step progressions are sufficiently like or reasonably related to the allegations in the EEOC Charge, such that they may be evaluated by the court in this follow-on suit.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1103 (9th Cir. 2002) ("[W]e should read the term 'harassment' broadly where it appears in the factual allegations of Plaintiff's discrimination charge.  We must keep in mind that complainants filing discrimination charges are acting as laypersons and should

24

not be held to the higher standard of legal pleading by which we would review a civil complaint.").

Regarding the second contention, although Plaintiff received notices for Steps 1 through 4 more than 300 days before filing his EEOC Charge, those notices and the underlying absences are still within the scope of the EEOC Charge due to the "continuing violation" doctrine:  Plaintiff's ADA discrimination claim is "based on the cumulative effect of [prior] individual acts"—i.e., the antecedent step progressions.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (narrowing the "continuing violation" doctrine relative to the Ninth Circuit's prior formulation, and stating that Title VII "[h]ostile work environment claims" are examples of "[s]uch claims [that] are based on the cumulative effect of individual acts").  Indeed, as Plaintiff argues, *see* ECF No. 45 at PageID # 514, the Step 5 termination notice and the final termination decision necessarily include the absences underlying the antecedent step progressions because without those absences, Plaintiff could not have been terminated under the ACP.  *See* ECF No. 31-29 at PageID # 327 (ACP) (establishing that Step 5, "Termination" requires a "15th Occurrence").[8]

---

[8] To the extent Defendant argues that Plaintiff forfeited his challenges to the antecedent step progressions because he signed a "waiver" in the first Step 4 notice, *see* ECF No. 30-1 at PageID # 111 (citing ECF No. 31-16), the court also rejects that argument.  The "waiver" in the first Step 4 notice was of Plaintiff's right to "participate in a disciplinary hearing pursuant to [the collective bargaining agreement]," not of Plaintiff's right to challenge by all means the absences

(continued . . . )

Further, when viewing the antecedent step progressions through the lens of their principal purpose of progressing an employee towards termination, those step progressions are not "discrete acts" that are "easy to identify" and that "constitute[] . . . separate actionable [violations of the ADA]." *See Morgan*, 536 U.S. at 114 (analyzing limitations period pertaining to Title VII claim). Unlike "termination, failure to promote, denial of transfer, or refusal to hire," the antecedent step progressions could not have been bases for ADA discrimination claims, because they were not publicized, were lacking punishment, and thus were not "adverse employment actions" under the ADA.[9] *See Good News Emp. Ass'n v. Hicks*, 223 F. App'x 734, 735 (9th Cir. 2007) (holding that "no adverse employment action was taken" when an employee received "an oral warning for posting [a] flyer [at work]"); *Moore v. Marriott Int'l, Inc.*, 2014 WL 5581046, at

---

purportedly supporting the first Step 4 notice, and certainly not of Plaintiff's right to challenge the absences supporting the second Step 4 notice. *See* ECF No. 31-16 at PageID # 313. Moreover, even if the first Step 4 notice is left untouched and the six occurrences cited in that notice are regrouped into two step increases, Plaintiff would have ended up at Step 4, not Step 5. *See* App. *infra* Part VI.

[9] Even if a preliminary step progression could be construed as an adverse employment action, it is impractical to expect an employee to go through the formal process of filing an EEOC charge and a subsequent suit in federal court for each disputed preliminary progression, especially when some of those progressions—such as the antecedent step progressions in this case—lack any punitive consequences beyond merely escalating the employee toward an ultimate punishment, e.g., termination. Beyond that impracticality, it is unreasonable from both the perspective of the employee *and the employer* to litigate (whether in court, before a state agency, or otherwise) the merits of preliminary step progressions that may be rendered irrelevant by subsequent events, such as, in this case, if Plaintiff were to have had an occurrence-free attendance record for one year following his Step 3 notice.

*8–11 (D. Ariz. Oct. 31, 2014) (collecting cases and noting that "[s]everal courts within the Ninth Circuit have held that a warning letter is not an adverse employment action"); *but see Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 848 (9th Cir. 2004) ("[T]he warning letter still constitutes an adverse employment action, particularly since Sysco publicizes all discipline to all its employees.").[10]

Finally, Defendant asserts that Plaintiff "did not always provide timely doctor's notes," ECF No. 30-1 at PageID # 106, and that Plaintiff "never submitted a request for intermittent leave or other restrictions" for his pertinent 2013 worker's compensation injury, *id.* at PageID # 123 (citing ECF No. 31-8 at PageID ## 214–15, 250–58).  Regarding the latter assertion, it is clear from Defendant's supporting citations to the record that neither a request for "intermittent leave" nor a request for "other restrictions" is tantamount to a request to exclude absences related to workplace injuries from the ACP.  "[O]ther restrictions" means light-duty accommodations.  *See* ECF No. 31-8 at PageID

---

[10] Defendant argues that the antecedent step progressions are "discrete acts" that are not subject to the continuing violation doctrine.  *See* ECF No. 46 at PageID # 518.  But Defendant's only support for that argument is an uncitable 2002 decision from the Ninth Circuit, *Bauer v. Board of Supervisors*, 2002 WL 1822328 (9th Cir. Aug. 8, 2002) (mem.).  *See* ECF No. 46 at PageID # 518; *see also* 9th Cir. R. 36–3(c).  Defendant also relies on this court's decision in *Yonemoto v. Shinseki*, 3 F. Supp. 3d 827 (D. Haw. 2014), to define "discrete acts," but the "discrete acts" in that case—plaintiff being "moved out of his office and into a semi-public area" and being "denied the reasonable accommodations requested in [a doctor's letter]—are different in kind from the incremental steps in a system of progressive discipline.  *See id.* at 843–44.

## 250–53.  And "intermittent leave" means FMLA leave.  *See id.* at PageID

## 214–15; *see also Weinstein v. AutoZoners LLC*, 2014 WL 898081, at *3 (D.

Nev. Mar. 6, 2014) ("Intermittent leave is FMLA leave taken in separate blocks of

time due to a single qualifying reason."  (quoting 29 C.F.R. § 825.202(a))).

Moreover, Plaintiff testified based on his understanding of the ACP that he merely

needed to "show proof that [he] [had] a certified letter from the doctor [in order to]

be excused" from the ACP.  ECF No. 31-8 at PageID # 267, ll. 13–15; *see also id.*

at PageID # 269, ll. 14–20.

Regarding Defendant's assertion that Plaintiff's submissions were

"not always . . . timely," the court finds that assertion too vague to satisfy

Defendant's initial burden of demonstrating the absence of a genuine issue of

material fact on the qualified-individual element.  To be sure, Defendant identifies

the "November 18-27, 2018 note" as not being submitted in a timely fashion.  *See*

ECF No. 30-1 at PageID # 125.  But the propriety of Plaintiff's submission of

notes covering those dates is irrelevant because Plaintiff is not challenging the Step

5 progression.  *See* ECF No. 35 at PageID # 370; *see also* App. *infra* Part VI

(counting the absences spanning "11/12/18 – 11/27/18" as an occurrence because

Plaintiff has not produced doctor's notes covering all of those dates).  Defendant

asserts there were "other[]" notes that were not submitted in a timely fashion, *see*

ECF No. 30-1 at PageID # 125, but that vague assertion does not satisfy

Defendant's initial burden, either. *See Sullivan v. Nocco*, 2016 WL 3917520, at *12 (M.D. Fla. July 20, 2016) ("Sikes, as the party moving for summary judgment, must point to specific record evidence demonstrating that there are no genuine issues of material fact for trial. . . . Sikes' vague argument fails to discharge this initial burden.").

Moreover, Plaintiff contradicts Defendant's assertions of untimeliness by testifying that he submitted doctor's notes to Defendant on multiple occasions,[11] and that he could not always immediately get an appointment with his doctor, forcing him to submit "backdated" notes, which Defendant should have accepted as timely under the ACP. *See* ECF No. 31-8 at PageID ## 269–70; *see also* ECF No. 36-3 at PageID ## 418–19, ¶ 5 ("If I was out of work for three or more days, I arranged for doctor's notes as soon as possible as required."); ECF No. 35 at PageID # 366 ("Plaintiff could not get an immediate doctor's appointment, so had to submit back-dated certificates.").

In sum, there are factual disputes as to whether absences related to worker's compensation should have been excluded from the ACP, whether Plaintiff complied with the established procedures for requesting certain absences be excluded from the ACP, and whether excluding such absences from Plaintiff's

---

[11] *See, e.g.*, ECF No. 31-8 at PageID # 208, ll. 8–22; *id.* at PageID # 212, ll. 4–15; *id.* at PageID # 224, ll. 1–5; *see also id.* at PageID # 236, ll. 1–3.

attendance record would have resulted in a lower final step rating (e.g., Step 3). Defendant does not contend in its motion that some other level of attendance below that required in the ACP is the level corresponding to a "reasonable accommodation" for the "essential functions" of Plaintiff's position. Nor does the authority cited by Defendant stand for such a proposition. *See, e.g.*, *Samper*, 675 F.3d at 1238–41 (granting summary judgment against ADA claimant when she desired attendance accommodation above and beyond the defendant's attendance policy); *West v. Alaska Airlines, Inc.*, 2020 WL 8175608, at *10–12 (D. Alaska Nov. 19, 2020) (same). Accordingly, the "qualified individual" element is not amenable to summary judgment.

### 3. *Causation*

To satisfy the third element of his ADA discrimination claim—causation—Plaintiff must show that "the adverse employment action would not have occurred but for [his] disability." *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). Courts have found a lack of but-for causation when the employer shows that it would have terminated the plaintiff-employee regardless of the disability. *See, e.g.*, *Whaley v. Bonded Logic Inc.*, 2020 WL 5593882, at *3 (D. Ariz. Sept. 18, 2020), *appeal dismissed*, 2021 WL 1529303 (9th Cir. Feb. 23, 2021); *Meade v. Gen. Motors LLC*, 317 F. Supp. 3d 1259, 1281–84 (N.D. Ga. 2018). Plaintiff's causation theory is simple—his disability caused the absences

that should have been excluded from the ACP but were instead improperly used by the Defendant as the bases for step progressions and, ultimately, termination.  *See* ECF No. 35 at PageID # 368.

Defendant fails on this element for the same reason it fails on the "qualified individual" element:  Defendant's sole contention on causation is that Plaintiff failed to satisfy the attendance requirements of the ACP, thus making his failure to satisfy a pre-established employment condition the cause of his termination, not his disability.  *See* ECF No. 30-1 at PageID ## 121–22; ECF No. 38 at PageID ## 494–95.  The problem for Defendant, of course, is that Plaintiff's termination under the ACP was improper when viewing the evidence in the light most favorable to Plaintiff.  *See* discussion *supra* Part IV.A.3; App. *infra* Part VI.  Because Plaintiff has established genuine issues of material fact as to whether he satisfied the attendance requirements of the ACP, the causation element is not amenable to summary judgment.

Portions of Defendant's briefing, if read extremely liberally, could be construed as asserting that there were "other" absences in Plaintiff's attendance record that could have been grounds for step increases under the ACP.  *See, e.g.*, ECF No. 30-1 at PageID # 115 ("Plaintiff was absent for other periods, but those absences were not considered for purposes of progressive discipline under the ACP."); ECF No. 38 at PageID # 496 ("Regardless, even assuming *arguendo* that

Plaintiff's worker's compensation absences were excluded, [Defendant] still had a legitimate basis for termination.").[12]  There is some support in the law for alternative-path arguments, i.e., if an employer can establish that it would have terminated the employee regardless of a protected status or right, causation fails. *See, e.g.*, *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 879 (10th Cir. 2004) (adjudicating FMLA claim and noting that "[i]f dismissal would have occurred regardless of the request for an FMLA leave, . . . an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave"); *Whaley*, 2020 WL 5593882, at *3; *Meade*, 317 F. Supp. 3d at 1281–84.

But analyzing the validity of those "other" absences would, for the purposes of this Motion, be a forlorn task.  Neither of the parties addresses those "other" absences in any detail.  The most insight provided in the record as to those other absences is Defendant's Exhibit B (ECF No. 31-3), which contains color-coded calendars of Plaintiff's attendance record from 2015 through 2019.  While the calendars show other "sick" leave absences during the period pertinent to this Motion, the calendars do not specify whether those absences were ultimately excused or, further, whether those other absences may be covered by workers'

---

[12] In another portion of Defendant's briefing, Defendant argues that "even if assuming *arguendo* the Court excluded the limited absences attributed to Plaintiff's worker's compensation injuries, Plaintiff still met the required three absences resulting in termination." ECF No. 38 at PageID # 495.  But that argument is confined to the Step 5 notice, which Plaintiff does not dispute could have been issued regardless of whether some of the absences enumerated in that notice were related to workers' compensation.

compensation pursuant to a doctor's note.  The court will not dredge through the record, like a pig sniffing out truffles, in search of evidence that Defendant should have presented in its Motion for an alternative-path causation theory.[13]  *See Bill Darrah*, 2018 WL 650195, at *6 n.6.

### 4.    *Legitimate, Non-Discriminatory Reason(s) for Termination*

Defendant is provided an opportunity to show a legitimate, nondiscriminatory reason for why it terminated Plaintiff.  *See Curley*, 772 F.3d at 632 (noting that the *McDonnell Douglas* burden-shifting framework applies to HWPA claims).  But once again, Defendant grounds its showing on the ACP, contending that "[e]ven if Plaintiff were to establish a prima facie case, [Defendant] had a legitimate reason for terminating him under the ACP."  ECF No. 30-1 at PageID # 122; *see also* ECF No. 38 at PageID ## 495–96.  That argument fails for the reasons expressed above.  *See* discussion *supra* Part IV.A.2.

In sum, Plaintiff has brought forth evidence establishing a genuine issue of material fact as to each element of his ADA discrimination claim. Defendant is not, therefore, entitled to summary judgment on that claim.

---

[13] Moreover, there is a substantial question as to the fairness of holding "other" absences against Plaintiff for the purposes of an alternative-path causation theory.  For example, if some of those "other" absences had originally been held against Plaintiff in a step progression, Plaintiff may have been able to secure notes from his physician certifying a connection to his workplace injuries.  It might also be possible that Plaintiff is in possession of such notes but has had no reason to submit them as evidence in this case given the scope of Defendant's arguments in its opening Memorandum.

**B.     HWPA Whistleblower Claim**

To establish a prima facie case for retaliation under the HWPA, Plaintiff must prove that: "(1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) the protected activity was a 'substantial or motivating factor' in the adverse employment action."  *See Henao v. Hilton Grand Vacations Inc.*, 772 F. App'x 510, 511 (9th Cir. 2019) (quoting *Crosby v. State Dep't of Budget & Fin.*, 76 Haw. 332, 342, 876 P.2d 1300, 1310 (1994) (analyzing HRS § 378–62)).

The only disputed element is the third element, causation. Circumstantial evidence can be sufficient for Plaintiff's showing on causation.  *See Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1133 (D. Haw. 2008) ("Though an employee may always present direct evidence of motive, proximity in time is one type of circumstantial evidence that is sufficient on its own to meet the plaintiff's burden."  (citing *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).  "To make a circumstantial case for causal link by temporal proximity, at a minimum, (1) the employer must know about the protected activity, and (2) there must be temporal proximity between the protected activity and the adverse employment action." *Dobbs v. Cnty. of Maui*, 144 Haw. 61, 62, 434 P.3d 1256, 1257 (Ct. App. 2019), *as corrected* (Mar. 13, 2019) (citing *You v. Longs Drugs Stores California, LLC*, 937 F. Supp. 2d 1237, 1258 (D. Haw. 2013)).

Plaintiff provides evidence that he engaged in protected activity by complaining to Ms. Anderson in 2018 that he was being denied workers' compensation in contravention of Hawaii law.  *See* ECF No. 31-8 at PageID ## 267–70; *see also* ECF No. 38 at PageID ## 499–500 (not specifically denying Plaintiff's allegations of protected activity).  And at the November 1, 2021 hearing, Plaintiff identified the adverse action as his termination.  *Cf.* ECF No. 1 at PageID # 6 ("The termination alleged was in violation of [the HWPA] due to Plaintiff's report of a violations [sic] of law for not allowing medical leave . . . ."); ECF No. 35 at PageID ## 362, 369.  That termination was set into motion on March 3, 2019, *see* ECF No. 36-18 (Step 5 notice) and finalized on July 23, 2019, *see* ECF No. 31-2 (final written decision).

Defendant challenges Plaintiff's showing on the causation element by asserting that Plaintiff has no evidence that his 2018 complaint was a substantial or motivating factor in the termination.  *See* ECF No. 30-1 at PageID # 128.  In response, Plaintiff offers circumstantial evidence of causation—he asserts that Ms. Anderson, "the person to whom Plaintiff complained about violations of the law," also "signed both the Step 4 and Step 5 notices."  ECF No. 35 at PageID # 370; *see* ECF No. 31-8 at PageID ## 267–70 (Plaintiff testifying that he complained to Ms. Anderson); ECF Nos. 36-14, 36-18 (step notices bearing Ms. Anderson's signature).  From this, a factfinder could infer that there was an open line of

communication between Ms. Anderson and upper management, giving upper management knowledge of Plaintiff's complaint and thus enabling a coordinated retaliation.

But although Plaintiff provides sufficient evidence that Ms. Anderson and Defendant's upper management had knowledge of the protected activity, Plaintiff does not provide sufficient evidence of temporal proximity between the protected activity and the adverse employment action.  Plaintiff's complaint to Ms. Anderson occurred sometime in 2018, according to his deposition testimony.  *See* ECF No. 31-8 at PageID # 268, ll. 16–20.  The final termination decision was issued a minimum of 8 months, and a maximum of 20 months, after the complaint. *See* ECF No. 31-2 at PageID # 144.  And the Step 5 termination notice was issued a minimum of 3 months, and a maximum of 15 months, after the complaint.  *See* ECF No. 36-18 at PageID # 456.

That evidence of proximity is insufficient to establish a triable issue of fact on causation.  *See Bassett v. Hawaii Disability Rts. Ctr.*, 2020 WL 7351113, at *13, *16 (D. Haw. Nov. 20, 2020) (analyzing causation for Title VII and HWPA claims, and noting that "time ranging from 42 days up to three months has been found sufficient to establish temporal proximity," while "a lapse of four or more months has been found to be too long" (citing *Pratt v. Haw. Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1147 (D. Haw. 2018))); *Aoyagi v. Straub Clinic & Hosp.,*

*Inc.*, 140 F. Supp. 3d 1043, 1060 (D. Haw. 2015) ("As an initial matter, courts generally reject causation for purposes of retaliation claims where the alleged adverse action by the employer occurs months or years after the alleged protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 . . . (2001) (per curiam)."); *Clark*, 532 U.S. at 273–74 (analyzing causation for a Title VII claim, noting that "temporal proximity must be 'very close,'" and citing decisions from courts of appeals holding a "3-month period insufficient" and a "4-month period insufficient").[14]  Defendant is thus entitled to summary judgment on the HWPA claim.

## C.    Punitive Damages

Finally, Defendant moves for summary judgment as to Plaintiff's request for punitive damages on his ADA claim.  "In an action brought by a complaining party under . . . section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. [§] 12112) . . . against an individual, the complaining party may recover compensatory and punitive damages" "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(a)–(b).  "The

---

[14] At the November 1, 2021 hearing, Plaintiff's counsel conceded that the evidence of temporal proximity was "not that strong."

terms 'malice' and 'reckless' ultimately focus on the actor's state of mind."

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).  And those terms "pertain

to the employer's knowledge that it may be acting in violation of federal law, not

its awareness that it is engaging in discrimination."  *Id.*

        Plaintiff fails to establish a triable issue of fact on his request for

punitive damages.  Plaintiff asserts that Defendant's actions "can be found to be

intentional discrimination done 'with malice or [with] reckless indifference to the

federally protected rights of [the] aggrieved individual[s].'"  ECF No. 35 at PageID

## 369–70 (quoting *Kolstad*, 527 U.S. at 530).  But other than this conclusory

statement, Plaintiff points to no evidence—direct or circumstantial—to support his

punitive damages claim.  *See id.*; ECF Nos. 36, 36-3.  Further, the court agrees

with Defendant's argument that terminating Plaintiff through a negotiated, pre-

established attendance policy—even when Defendant may have erroneously

applied that policy—tends to undercut Plaintiff's assertion of malice or reckless

intent as to a violation of law.  *See* ECF No. 30-1 at PageID ## 128–30 (arguing

that "[g]iven the . . . deliberative process allowed through the termination hearing

and the supported basis for the decision, Plaintiff fails to establish such 'malice' or

'reckless indifference'"); *see also Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 923

(S.D. Ind. 2016) (granting summary judgment against punitive damages claim

when there were no "verbal abuse or comments" directed at plaintiff, plaintiff did

not dispute her "chronic attendance problems," and defendant "undertook a deliberate and good faith process to confirm that [plaintiff's] [absences] were correctly calculated").

The record in this case simply does not give way to an inference of malice or recklessness.  Plaintiff has not, therefore, established a genuine issue of material fact relating to his request for punitive damages.  That request is dismissed.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.  It is DENIED with respect to Plaintiff's ADA claim.  It is GRANTED with respect to Plaintiff's HWPA claim and Plaintiff's request for punitive damages.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 15, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Sing v. Hawaiian Airlines, Inc.*, Civ. No. 20-00052 JMS-RT, Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, ECF No. 30

# VI. **APPENDIX**

| Step Increase / Decrease | Predicate Occurrences | Doctor's Notes / Other Coverage | Regrouping Remaining Absences |
|---|---|---|---|
| Step 0 → Step 1 (04/20/17) (ECF No. 36-4) | 1. 03/18/17<br>2. 03/31/17 – 04/01/17<br>3. 04/06/17 – 04/15/17 | 04/08/17 – 04/09/17 (ECF No. 36-5)<br>04/10/17 – 04/12/17 (RDO*) | 1. 03/18/17<br>2. 03/31/17 – 04/01/17    **Step 1**<br>3. 04/06/17 – 04/07/17      ↑<br>   04/13/17 – 04/15/17 |
| Step 1 → Step 2 (06/23/17) (ECF No. 36-6) | 1. 04/22/17 – 04/30/17<br><br>2. 05/06/17 – 05/07/17<br>3. 05/14/17 | 04/24/17 – 04/26/17 (RDO*) | 1. 04/22/17 – 04/23/17<br>   04/27/17 – 04/30/17    **Step 2**<br>2. 05/06/17 – 05/07/17      ↑<br>3. 05/14/17 |
| Step 2 → Step 3 (08/14/17) (ECF No. 31-15) | 1. 06/25/17<br>2. 07/08/17 – 07/13/17<br><br><br>3. 07/16/17 – 07/17/17<br>4. 07/22/17 – 07/24/17 | 07/08/17 – 07/09/17 (ECF No. 36-8)<br>07/10/17 – 07/12/17 (RDO*)<br>07/13/17 (ECF No. 36-9)<br>07/16/17 – 07/17/17 (ECF No. 36-9)<br>07/22/17 – 07/24/17 (ECF No. 36-10) | 1. 06/25/17<br><br><br>[More than three months] |
| Step 3 → Step 4 (12/04/17) (ECF No. 31-16) | 1. 08/21/17<br>2. 09/26/17<br>3. 10/10/17<br>4. 10/16/17 – 10/25/17<br><br>5. 11/05/17 – 11/08/17<br><br>6. 11/13/17 – 11/14/17 | 08/21/17 (ECF No. 36-12)<br>09/26/17 (ECF No. 36-13)<br><br>10/19/17 – 10/21/17 (RDO*)<br><br>11/06/17 – 11/07/17 (RDO*) | 1. 10/10/17<br>2. 10/16/17 – 10/18/17<br>   10/22/17 – 10/25/17    **Step 3**<br>3. 11/05/17      ↑<br>   11/08/17<br>1. 11/13/17 – 11/14/17 |
| Step 4 → Step 3 (Early 2018) (*See* ECF No. 30-1) | N/A | N/A | ↓<br>**Step 2**<br>[More than three months] |
| Step 3 → Step 4 (04/29/18) (ECF No. 36-14) | 1. 02/06/18 – 02/11/18<br>2. 02/27/18 – 02/28/18<br>3. 03/26/18 – 03/28/18<br>4. 04/22/18 – 04/25/18 | 02/06/18 – 02/11/18 (ECF No. 36-15)<br><br>03/26/18 – 03/28/18 (ECF No. 36-16)<br>04/22/18 – 04/25/18 (ECF No. 36-17) | 1. 02/27/18 – 02/28/18** |
| Step 4 → Step 5 (03/03/19) (ECF No. 36-18) | 1. 05/01/18 – 05/02/18<br>2. 06/05/18<br>3. 07/29/18<br>4. 08/19/18<br>5. 11/12/18 – 11/27/18<br><br><br>6. 12/04/18<br>7. 12/09/18<br>8. 12/12/18 | 06/05/18 (ECF No. 36-19)<br><br>11/15/18 – 11/17/18 (RDO*)<br>11/22/18 – 11/24/18 (RDO*) | 1. 05/01/18 – 05/02/18**<br><br>1. 07/29/18**<br>1. 08/19/18**<br>1. 11/12/18 – 11/14/18<br>   11/18/18 – 11/21/18    **Step 3**<br>   11/25/18 – 11/27/18      ↑<br>2. 12/04/18<br>3. 12/09/18<br>1. 12/12/18 |
| Others | 1. 01/02/19 – 01/08/19 | 01/02/19 – 01/07/19 (ECF No. 36-20)<br>01/08/19 (ECF No. 36-21) | |

| | 2. 01/13/19 – 01/16/19 | 01/13/19 – 01/14/19 (ECF No. 36-22) | 2. 01/15/19 – 01/16/19 |
|---|---|---|---|

\* "RDOs" or "Rostered Days Off" are shown on the color-coded calendars of Plaintiff's attendance record, ECF No. 31-3.

\*\* None of these occurrences can be grouped with two other surrounding occurrences because they are more than three months separated from at least one of those two surrounding occurrences (e.g., the absences on 02/27/18 – 02/28/18 are less than three months separated from the absences on 05/01/18 – 05/02/18 but are more than three months separated from the absence on 07/29/18).